(164 App. Div. 582)
### NOSK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   November 27, 1914.)

1. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—NEGLIGENCE—EVI-
DENCE.

In an action for death of a servant while inside one of defendant's
boilers by a fireman attempting to "blow down" another boiler without
making sure that the cut-off valve had been closed on the blow-off pipe
leading into the boiler where decedent was at work, evidence *held* insuffi-
cient to sustain a finding that the valve had been opened by defendant's
engineer after the fireman had examined it, shortly before the accident
and found it closed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–
952, 954, 959, 970, 976;  Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—NEGLIGENCE.

Where, in an action for death of a servant while cleaning one of de-
fendant's boilers by being scalded by hot steam let into the boiler by the
fireman while blowing off another boiler, without closing the pipe lead-
ing into the boiler in which decedent was working, the jury might have
found that it was the duty of the engineer, before ordering the fireman
to blow off the boiler, to see that the connecting valve was closed, his
failure to do so, resulting in decedent's death, was actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001,
1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050;  Dec. Dig.
§ 286.*]

Appeal from Trial Term, Kings County.

Action by Maud Nosk, as administratrix of John F. Nosk, deceased,
against the city of New York.   From a judgment for plaintiff, and
from an order denying a new trial, defendant appeals.   Reversed, and
new trial granted.

Argued before Jenks, P. J., and THOMAS, CARR, STAPLETON,
and PUTNAM, JJ.

Frank Julian Price, of New York City, for appellant.
Martin T. Manton, of New York City (Vine H. Smith, of New York
City, on the brief), for respondent.

JENKS, P. J.   This action is by the administrator of a servant
against the master for negligence.   The master maintained a pumping
station wherein were three boilers.   The blow-off pipe was common
to the three, but could be cut off from any one of them by a valve.   At
8 o'clock a. m. the servant went inside one of the boilers to clean it.
About an hour after, O'Malley, a fireman of the defendant, assigned
to that station, began to "blow down" a boiler.   In that work he ad-
mitted steam into the blow-off pipe, whence the steam passed into the
boiler wherein the servant was at work and fatally injured him.   If the
blow-off pipe had been cut off by the valve from the boiler wherein the
servant was at work, the casualty could not have happened.

The plaintiff offered proof that the valve was closed at 8:10 a. m.,
and also proof circumstantial which she insists permits the conclusion
that after that hour, and before O'Malley began to blow down, that
valve was opened by the engineer in charge of that station.   The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge of the learned court permitted the jury to find negligence, if they but determined that the valve was closed at 8:10 a. m. and was opened thus by the engineer. There was other proof offered for the purpose of establishing negligence, and the question of liability was not limited by the court to the instruction stated. But, as the verdict was general, it cannot be said that the jury may not have rendered its verdict entirely within the said instruction.

[1] I am not satisfied that the proof was sufficient to justify the conclusion that the valve was opened by the engineer. The proof was given mainly by O'Malley. This witness says that, after he examined the valve at 8:10 a. m., he went to clean the fires in boiler No. 1, and at that time, about 9 a. m., the engineer went in between boilers Nos. 1 and 3 (No. 2 was that wherein the servant was at work), where this valve was, and bent down, but that the witness could not see the engineer's arms or what he was doing. O'Malley says that the engineer passed outside of the building, but came again in between the boilers. He says that the valve was 4 or 5 inches from the floor. O'Malley says that he was around these boilers all of the time between 8 and 9 a. m., save that he went outside twice to dump loads of ashes, which work he could do in a minute or less, and that none other than the engineer came into the station during that time, save a negro to borrow a shovel (who happened to be on the floor when the casualty happened), and a fellow servant, Waters, who was wheeling in coal, but who was not around the boilers save in the morning, when the men changed their clothes. O'Malley says that there were not many houses near the station—that the nearest was 500 or 600 feet distant. The only other men present in the station that morning, according to O'Malley, were the said intestate, Halloran, who was at work with the intestate, and Hughes.

The proof that the valve was closed at 8:10 rests upon the testimony of O'Malley alone, who was tried on charges relating to the casualty, and dismissed. It may be gleaned from his testimony and that of Halloran that it was the duty, or at least the custom, of the fireman (and such was O'Malley) to examine the valve before blowing down, without instructions from the engineer. If O'Malley had done so on this occasion, and found the valve open, presumably he could have prevented the escape of steam from the blow-off pipe into this boiler by turning off that valve. Presumably he did not examine the valve at all, or, if he looked at it, he did not see its condition. He may have relied upon the fact that he found the valve closed an hour before. Whatever the shortcomings of the engineer, if O'Malley had observed the custom properly, it would seem that the casualty could not have happened. It was but human for him to shift the blame upon another. He may well have smarted under his discharge. On the other hand, the engineer denies positively that he turned on the valve, and says that he went through the boiler room on that morning only to instruct Hughes, who was to dig a trench. The fireman, Waters, went to work at 8 a. m., and was at work wheeling coal from the shed, 45 to 60 feet distant, into the fire room, from 8 a. m. until the casualty. He wheeled in 12 or 14 barrels of coal, and occupied in each wheeling a little more than 12 minutes. For a part of each time thus consumed

he could not see the fire room, but while he was thus in and out he did not see the engineer therein. No reason whatever is suggested why the engineer should have gone into the fire room to turn on this valve of the blow-off pipe.

[2] I am not prepared to say that the plaintiff could not have recovered upon her case; for it appears that O'Malley testifies that he notified the engineer of his purpose to blow down, and that the engineer answered, "Go ahead and blow the boilers." The engineer admits the notification. He denies that he gave any direction. He asserts that he made no response. He admits that he did not attend. He does not testify that he gave an indication of his purpose to attend. It appears that at the moment of notification he was engaged outside of the boiler room in instructions to Hughes as to work which does not seem either emergent or urgent. The jury might have found that it was the duty of the engineer to attend at the boilers forthwith, or, if he thought that he could not do so, he should have said something in restraint of O'Malley, or in reminder to him of the rule or custom. Or, again, if the jury were satisfied that subsequent to 8:10 a. m. the engineer had turned on the valve, they might have found that therefore, when O'Malley notified him of the proposed blowing down, it was his duty in the exercise of due care to notify O'Malley of the condition of the valve, or, beyond reliance of any general rule or custom, to caution O'Malley to wait until he came to examine the valve. As a consequence, they might have found that the said engineer in charge, as the representative of the defendant, omitted without justification to make inspection of the valve or cock before this work of blowing down, and hence was negligent.

The judgment and order are reversed, and a new trial is granted; costs to abide the event. All concur.

